# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MUHAMMAD ASAD ALI, M.D., )
)
Plaintiff, )
)
v. ) Case No. 04 C 7930
)
WAL-MART STORES, Inc. )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case comes before the Court pursuant to its diversity jurisdiction. 28 U.S.C. § 1332(a). Plaintiff Muhammad Asad Ali, M.D. has sued defendant Wal Mart Stores, Inc. in a three count complaint alleging state law claims of false arrest, battery by reason of race under 720 ILCS 5/12-7.1, and intentional infliction of emotional distress. Wal Mart has moved for summary judgment on the last two claims only. For the following reasons, the Court grants the motion.

### Facts

Ali and his mother, Kahkushan Arshad, are originally from Pakistan. On November 19, 2003, they were shopping together at a Sam's Club in Evanston and decided to purchase some Brita water filters. According to Ali, he noticed an opened box of Brita filters sitting on a shelf, picked it up, placed it in his shopping cart, and continued shopping. When Ali reached the checkout stand, the cashier noticed that the box was opened and sealed it with a piece of tape. Ali paid for the items in his shopping cart and headed towards the exit.

1

Ali and his mother left the building and were quickly stopped by a Wal-Mart security guard, John Paul Arellano, who asked Ali if he had forgotten to pay for any of the items in his shopping cart. When Ali answered no, Arellano grabbed him by the arm and led him to an office inside the store. Arellano accused Ali of trying to steal a Brita filter by placing a seventh filter in a box of six. There was indeed a seventh filter in the box, but Ali denied stealing the filter and insisted that it was already in the box when he removed it from the shelf. Nevertheless, Arellano called the police and completed a "Loss Prevention Apprehension Report." In that report, which includes a space for a description of the suspect, Arellano noted (incorrectly) that Ali was Indian. The police arrived, handcuffed Ali, escorted him out of the store, and drove him to the police station. He remained there for four to five hours until his brother and mother picked him up. A Cook County judge eventually acquitted Ali of theft after a bench trial in state criminal court.

Ali claims that the experience caused him a great deal of anxiety. Because he is in the United States on a visa based on his profession, he was worried that he would be deported and that his mother and sister would have no one to support them financially. He claims that he did not receive any counseling for his anxiety because he was concerned that if he did, other doctors would find out what happened.

## Discussion

On a motion for summary judgment, the law requires the Court to consider the evidence and draw all reasonable inferences in favor of Ali, the non-moving party in this case. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must look at the evidence "as a jury might, construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Payne*

*v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

1. **Battery by reason of race**

Illinois provides a civil remedy for any victim of a hate crime. 720 ILCS 5/12-7.1. A hate crime occurs when, among other things, an individual commits a battery by reason of the actual or perceived race of another. *Id.* Ali claims that a jury reasonably could find that Arellano committed a battery against him by reason of his race when Arellano grabbed Ali by the arm and led him back to the store. Ali claims that because his mother was wearing traditional Pakistani dress at the time of the incident and because of the notation in the apprehension report that he was "Indian," a jury reasonably could find that the battery was racially motivated.

Ali cites two cases in support of his argument: *Johnson v. Smith*, 878 F. Supp. 1150, 1153 (N.D. Ill. 1995), and *Abdoh v. City of Chicago*, 930 F. Supp. 311, 313 (N.D. Ill. 1996). In *Johnson*, the defendants were criminally convicted of burning a cross in the African-American plaintiffs' yard and throwing a brick through their window. 878 F. Supp. at 1152-53. The plaintiffs then sued the defendants in a civil suit for the same offense. *Id.* at 1153. The court held that, because of the criminal conviction, summary judgment for the plaintiffs was proper. *Johnson* does not control this case. *Id.* Arelleno was not convicted of a hate crime, and Ali's evidence is nothing like what is inherent in burning a cross.

In *Abdoh*, the court denied defendant's motion to dismiss because the plaintiff had adequately alleged that a police officer battered him because of his race. 930 F. Supp. at 313. The court did not consider whether the plaintiff offered reasons to support his allegation that the battery was by reason of race; it held only that the plaintiff satisfied the Federal Rules' relatively undemanding notice pleading requirements. *Id.* In this case, the issue is whether there is

3

sufficient evidence for the claim to go to trial, not whether Ali has sufficiently pled his claim. Therefore, *Abdoh* does not control this case either.

Another case, which was not cited by the parties, addresses the type of evidence needed to prove that a defendant committed a crime by reason of race. *People v. Davis*, 285 Ill. App. 3d 875, 880, 674 N.E.2d 895, 898 (1996). In *Davis*, the court examined whether the evidence was sufficient to uphold the defendant's conviction for a hate crime. *Id.* Though the court recognized the issue was a close one, it held that the defendant's statement "F... you nigger," was enough for a jury reasonably to conclude that race motivated the defendant's attack. *Id.* Here, there was no such racial utterance or derogatory comment. Ali Dep. at 65. The only reference that Arellano made to Ali's race was in a standard report Arellano completed after Ali was stopped. The reference identified Ali as Indian, was not derogatory in any way, and is not evidence of racial animus. Ali also points to the fact that Arshad was wearing traditional Pakistani clothing and that Wal-Mart security guards pay attention to clothing during their surveillance. These facts only suggest that Arellano noticed what Ms. Arshad was wearing, not that Arellano's detention of Ali was motivated by race. Under the circumstances, no jury reasonably could find that Arellano committed a battery against Ali because of race.

## 2. Intentional infliction of emotional distress

Ali also claims that, based on the evidence he presented, a jury reasonably could find Wal-Mart liable for intentional infliction of emotional distress ("IIED"). In Illinois, a defendant is liable for IIED if the plaintiff proves that the defendant's conduct was extreme and outrageous, that the defendant intended to inflict severe emotional distress or knew there was a high probability that his conduct would cause severe emotional distress, and that the conduct did in

4

fact cause severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 85, 533 N.E.2d 806, 809 (1989).

To satisfy the first element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767 (1976). The cases Ali cites in his brief illustrate the high standard this element demands. *Bristow v. Drake Street Inc.*, 41 F.3d 345, 350 (7th Cir. 1994) (holding that where employer followed plaintiff around at work, banged on her apartment door late at night, and left death threats on her answering machine, defendant's behavior was sufficiently outrageous to meet first element of IIED claim); *Littlefield v. McGuffey*, 954 F.2d 1337, 1343 (7th Cir. 1992) (upholding jury verdict where defendant made repeated racist threats to plaintiff including threats of death); *Doe v. Calumet City*, 161 Ill. 2d 374, 394, 641 N.E.2d 498, 507 (1994) (reversing trial court's dismissal where plaintiff alleged that police officer refused to break down her door despite being told that a man was raping plaintiff's daughter inside).

In this case, there is some evidence from which a jury reasonably could find that Arellano reported Ali for shoplifting without seeing Ali take anything from the store. At first glance, however, this is not the same kind of outrageous behavior present in the previously cited cases, and Illinois case law supports this intuition. In *Khan v. American Airlines*, 266 Ill. App. 3d 726, 732, 639 N.E.2d 210, 215 (1994), *abrogated on other grounds by*, *Velez v. Avis Rent A Car Sys.*, 308 Ill. App. 3d 923, 721 N.E.2d 653 (1994), the plaintiff alleged that American Airlines security officers, who knew the plaintiff was on his way to his father's funeral, planted a stolen airline ticket on the plaintiff's person and caused him to be arrested by Chicago police. The court held

that this allegation was not sufficiently severe to meet the high standard of outrageousness. The allegations in *Khan* are similar to the evidence presented here, and, as a result, the Court concludes that Ali's evidence cannot establish the first element of an IED claim. Though it would be upsetting to be placed under arrest without justification, no jury reasonably could find that Wal-Mart's behavior was outrageous as defined by law.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment as to Counts 2 and 3 [docket no. 14]. The case is set for a status hearing at 9:30 a.m. on October 11, 2005 to discuss the possibility of settlement.

*Matthew Kennelly*
MATTHEW F. KENNELLY
United States District Judge

Date: September 21, 2005